# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| CARLYNDA DICKINSON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0502-MU |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Carlynda Dickinson brings this action, pursuant to 42 U.S.C. §1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 23 (endorsed order of reference)). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court concludes that the Commissioner's decision

---

[1] The parties waived oral argument in this case. (Doc. 22; *see also* Doc. 24 (order granting joint motion to waive oral argument)).

denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

## I. Procedural Background

Plaintiff protectively filed an application for supplemental security income on January 9, 2015, alleging disability beginning on December 17, 2014. (*Compare* Tr. 167-72 *with* Tr. 15.) Dickinson's claim was initially denied on April 2, 2015 (Tr. 93 & 97-100) and, following Plaintiff's April 23, 2015 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 101-04), a hearing was conducted before an ALJ on August 15, 2016 (Tr. 39-78). On November 21, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income. (Tr. 15-34.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Dickinson retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 33 *with* Tr. 72-73). And, after the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council, the Appeals Council denied Plaintiff's request for review on September 15, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to peripheral neuropathy, low back pain, knee pain, calluses on her feet, depression and anxiety, intellectual disability, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: peripheral neuropathy, low back pain, diabetes mellitus, vision impairment, depression, anxiety, intellectual disability and slow learner, and obesity (20 CFR 416.920(c)).**
>
> . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She should have a sit/stand option every 30 minutes, if needed. She can climb; occasionally stoop, balance, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds. She can frequently reach and she can occasionally use her upper and lower extremities bilaterally for pushing and pulling. She requires a cane for an assistive device. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity. She should avoid all exposure to hazardous conditions, such as unprotected heights, dangerous machinery, and uneven surfaces. She has no visual or communicative limitations. She is expected to have 1-2 unplanned absences monthly due to her condition. She is restricted to unskilled work with no more than simple, short instructions and simple work-related decisions with few work place changes. In addition, she is limited to low stress work requiring only simple, work-related decisions with few work place changes. Due to concentration issues, the claimant is unable to work in close proximity to others and she is easily distracted.**
>
> . . .

> 5. **The claimant has no past relevant work (20 CFR 416.965).**
>
> 6. **The claimant was born on November 15, 1980 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was [protectively] filed (20 CFR 416.963).**
>
> 7. **The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**
>
> 8. **Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**
>
> 9. **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**
>
> . . .
>
> 10. **The claimant has not been under a disability, as defined in the Social Security Act, since January 9, 2015, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 17, 22, 32 & 33 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2016). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an

impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing any past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[3] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in

---

[3] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'"). [4]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs identified by the VE during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[5] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, Dickinson asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence), namely, that the ALJ committed reversible in that his RFC determination is not supported by substantial evidence and the ALJ erred in finding that she does not have mental retardation as diagnosed by consultative examiner Dr. Donald W. Blanton. Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's first assignment of error, the Court has no reason to address Dickinson's other assignment of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.,* 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to

supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Davison, supra,* 370 Fed.Appx. at 996 ("An ALJ makes an RFC determination by considering the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach."); 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a

meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all

---

[6] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ's RFC assessment cannot be found to be supported by substantial evidence because the ALJ does not explain, when summarizing the evidence of record and attempts to articulate the required linkage, how the medical evidence related to each of Plaintiff's impairments supports each component of his RFC assessment. Indeed, while the ALJ uses very general linkage language (*see* Tr. 29 ("The medical records demonstrate some ongoing problems with neuropathy and other physical issues, but the undersigned has provided several physical and mental limitations in the established residual functional capacity to encompass symptoms related to her impairments. Even with these restrictions, the vocational expert testified there is other work existing in significant numbers that the claimant is capable of performing.")), he nowhere specifically links each component of his RFC assessment to medical (and other) evidence in the record. And such linkage was of paramount importance in a case, like the instant one, where the ALJ rejected every physical RFC assessment completed by a treating, examining or non-examining physician. (*Compare* Tr. 30-31 (the ALJ's assessment of "physical" opinion evidence of record) *with* Tr. 83-84 & 86-88 (physical RFC assessment by non-examining, reviewing physician Dr. Gregory Parker); Tr. 579-583 (examination and physical assessment by examining physician Dr. Ashleigh Butts); Tr. 664 (physical medical source statement completed by treating neurologist Dr. Walid Freij); & Tr. 727 (physical medical source statement completed by treating physician Dr. Huey R. Kidd)).

Of particular import to this Court, the ALJ acknowledges that Plaintiff's peripheral neuropathy is a severe impairment (Tr. 17) and recognizes during the course of his opinion that part and parcel of Dickinson's peripheral neuropathy is her carpal tunnel syndrome (*see id.* at 26-27 (discussing nerve conduction studies on Plaintiff's hands and lower extremities and referencing the diagnoses of Dr. Freij, including carpal tunnel syndrome)), *see* http://peripheralneuropathycenter.uchicago.edulearnaboutpn/yypes (last visited, September 25, 2018) ("Carpal tunnel syndrome is a localized peripheral neuropathy that affects the hands."). In addition, the ALJ goes so far as to accord "full weight" to the "opinion" of Plaintiff's treating neurologist, Dr. Walid Freij, that Dickinson was "to exercise, wear a brace,[7] take medications and avoid bending, stooping, heavy lifting and carrying, and other recommendations." (Tr. 27 (footnote added); *see also* Tr. 713 (Plaintiff's office visit with Dr. Freij dated February 9, 2015); *see* Tr. 702-21 (office records from Dr. Freij)). According to the ALJ, this "opinion" by Dr. Freij "is consistent with the evidence at the time and **not inconsistent with the residual functional capacity**." (Tr. 27 (emphasis supplied)). This Court can simply not agree, however, both because the ALJ did not identify all elements of Dr. Freij's opinion that he accorded full weight (that is, the "other recommendations") and indicate specifically how those recommendations were consistent with his RFC assessment and because he "leaves out" of his RFC assessment findings regarding manipulative functions that are normally made when a claimant has carpal tunnel syndrome. Initially, the undersigned notes that one of Dr. Freij's "other recommendations" regarding Plaintiff's carpal tunnel syndrome

---

[7] The treatment plan outlined for Plaintiff by Dr. Freij actually indicated that Dickinson was to wear wrist braces (*see, e.g.,* Tr. 707), not just a single brace (*compare id. with* Tr. 27).

was that she avoid repetitive motion at the wrists, in addition to wearing wrist braces (*see, e.g.,* Tr. 707), yet the ALJ failed to specifically "link" these particular plan recommendations/opinions—to which he purportedly accorded "full weight"—to his RFC findings that Plaintiff can frequently reach, as well as lift and carry up to 20 pounds occasionally (*see generally* Tr. 22-29). More importantly, despite his acceptance of Dr. Freij's "opinion," as outlined above, the ALJ's RFC determination contains no findings regarding all the manipulative functions found attendant to carpal tunnel syndrome, namely, for instance, handling and fingering, *see, e.g., Quinones-Santos v. Commissioner of Social Security,* 2016 WL 3344793, *2 & *4 (M.D. Fla. June 16, 2016) (noting the ALJ's specific RFC findings that the claimant could perform no more than occasional reaching overhead bilaterally and no more the frequent reaching bilaterally, as well as no more than frequent fingering and handling bilaterally and then finding that the evidence of record relating to Plaintiff's carpal tunnel syndrome supported the manipulative functional limitations found by the ALJ), and obviously did not "link" these non-existent findings to any evidence in the record bearing upon Dickinson's abilities to handle and finger objects in a work setting.

Without a full appreciation of the limitations of manipulative functions attendant to Plaintiff's carpal tunnel syndrome and a "tying" of those limitations to evidence in the record, this Court cannot find that the ALJ's RFC assessment provides an articulated linkage to substantial medical evidence of record,[8] and, therefore, this case must be

---

[8] The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show **how** they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL (Continued)

remanded to the Commissioner of Social Security for further consideration not inconsistent with this decision.[9] Stated somewhat differently, the ALJ has failed to provide this Court with sufficient reasoning for determining that the proper legal analysis has been conducted.[10]

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[11] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111

---

1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide **enough reasoning** for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)). Thus, by failing to "show his work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

[9] The ALJ's RFC determination is also internally inconsistent in that it clearly states she "can climb[,]" followed shortly thereafter by the finding that she can "never climb ladders, ropes, or scaffolds." (Tr. 22.) On remand, the ALJ will have the opportunity to correct this internal inconsistency.

[10] That the RFC deficiencies had an impact in this case is clear given that all the light jobs identified by the vocational expert during the administrative hearing require frequent to constant reaching and handling, as well as occasional to constant fingering. *Compare* DOT § 211.467-030 (job of ticket seller requires **constant** reaching, handling and fingering) *with* DOT § 299.677-010 (job of sales attendant requires **frequent** reaching and handling and **occasional** fingering) and *Suarez v. Astrue,* 2012 WL 4848732, *4 (C.D. Cal. Oct. 11, 2012) (recognizing that the DOT description of bench assembler, in § 706.684-042, requires **frequent** reaching, handling, and fingering). Therefore, the ALJ's failure to include in his RFC assessment any findings regarding the manipulative functions of handling and fingering attendant to Plaintiff's carpal tunnel syndrome cannot be overlooked by this Court.

[11] Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 16th day of October, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**